1  BRYAN SCHWARTZ (SBN: 209903)
2  ADETUNJI OLUDE (SBN: 264873)
   BRYAN SCHWARTZ LAW
3  1330 Broadway, Suite 1630
   Oakland, CA 94612
4  Telephone: (510) 444-9300
   Facsimile: (510) 444-9301
5  Email: bryan@bryanschwartzlaw.com
   Email: adetunji@bryanschartzlaw.com
6
7
   LEON GREENBERG (SBN: 226253)
8  DANA SNIEGOCKI (SBN: 261212)
   LAW OFFICE OF LEON GREENBERG
9  2965 South Jones Boulevard #E-4
   Las Vegas, NV 89146
10 Telephone: (702) 383-6085
11 Facsimile: (702) 385-1827
   Email: leongreenberg@overtimelaw.com
12 Email: dana@overtimelaw.com

13 *Attorneys For Plaintiffs Jacqueline Benjamin, Bryan Gonzalez,*
   *And Taiwo Koyejo, And All Others Similarly Situated*
14

DAVID A. LOWE (SBN: 178811)
CHAYA M. MANDELBAUM (SBN: 239084)
MICHELLE G. LEE (SBN: 266167)
RUDY, EXELROD, ZIEFF & LOWE, LLP
351 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 434-9800
Facsimile: (415) 434-0513
Email: dal@rezlaw.com
Email: cmm@rezlaw.com
Email: mgl@rezlaw.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE BENJAMIN, BRYAN GONZALEZ, and TAIWO KOYEJO, on behalf of themselves and classes of those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> B&H EDUCATION, INC., a corporation, dba "MARINELLO SCHOOLS OF BEAUTY"; and DOES 1 through 100, <br><br> Defendants. <br> _____/ | Case No. CV 13-04993-VC <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT REGARDING EMPLOYMENT UNDER THE FAIR LABOR STANDARDS ACT, CALIFORNIA LABOR CODE, CALIFORNIA BUSINESS AND PROFESSIONS CODE, AND NEVADA LAW** <br><br> Date:   September 24, 2015 <br> Time:   10:00 a.m. <br> Place:  Courtroom 4 – 17th Floor <br> Judge: Hon. Vince Chhabria |

**TO DEFENDANTS AND TO ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on September 24, 2015, at 10:00 a.m. in Courtroom 4, 17th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or as soon thereafter as counsel may be heard by the above-entitled Court, Plaintiffs Jacqueline Benjamin, Bryan Gonzalez, and Taiwo Koyejo, on behalf of themselves and classes of those similarly situated ("Plaintiffs") will and hereby does move this Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment on the issue of whether Plaintiffs are employees entitled to minimum wage and other protections under the Fair Labor Standards Act, the California Labor Code, and the Nevada Constitution and Revised Statues, along with restitution under the California Business and Professions Code.

Plaintiffs' Motion will be based upon this Notice of Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, and the Declaration of Chaya Mandelbaum filed in support hereof, the papers filed herein, and such additional evidence and oral argument as counsel may present during the hearing on this Motion.

DATED:  June 16, 2015                    Respectfully submitted,

BRYAN SCHWARTZ LAW
RUDY, EXELROD, ZIEFF & LOWE, L.L.P.
LAW OFFICE OF LEON GREENBERG

By:   */s/ Chaya M. Mandelbaum*
BRYAN SCHWARTZ
ADETUNJI OLUDE
DAVID A. LOWE
CHAYA M. MANDELBAUM
MICHELLE G. LEE
LEON GREENBERG
DANA SNIEGOCKI

*Attorneys for the Named Plaintiffs and all others similarly situated*

PLAINTIFFS' NOTICE OF MOTION FOR SUMMARY JUDGMENT RE: EMPLOYMENT UNDER THE FLSA, CALIFORNIA LABOR CODE, CALIFORNIA BUSINESS AND PROFESSIONS CODE, AND NEVADA LAW
CASE NO. CV 13-04993-VC

BRYAN SCHWARTZ (SBN: 209903)
ADETUNJI OLUDE (SBN: 264873)
BRYAN SCHWARTZ LAW
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301
Email: bryan@bryanschwartzlaw.com
Email: adetunji@bryanschartzlaw.com

DAVID A. LOWE (SBN: 178811)
CHAYA M. MANDELBAUM (SBN: 239084)
MICHELLE G. LEE (SBN: 266167)
RUDY, EXELROD, ZIEFF & LOWE, LLP
351 California Street, Suite 700
San Francisco, CA 94104
Telephone: (415) 434-9800
Facsimile: (415) 434-0513
Email: dal@rezlaw.com
Email: cmm@rezlaw.com
Email: mgl@rezlaw.com

LEON GREENBERG (SBN: 226253)
DANA SNIEGOCKI (SBN: 261212)
LAW OFFICE OF LEON GREENBERG
2965 South Jones Boulevard #E-4
Las Vegas, NV 89146
Telephone: (702) 383-6085
Facsimile: (702) 385-1827
Email: leongreenberg@overtimelaw.com
Email: dana@overtimelaw.com

*Attorneys For Plaintiffs Jacqueline Benjamin, Bryan Gonzalez,
And Taiwo Koyejo, And All Others Similarly Situated*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE BENJAMIN, BRYAN GONZALEZ, and TAIWO KOYEJO, on behalf of themselves and classes of those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>B&H EDUCATION, INC., a corporation, dba "MARINELLO SCHOOLS OF BEAUTY"; and DOES 1 through 100,<br><br>Defendants. | Case No. CV 13-04993-VC<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING EMPLOYMENT UNDER THE FAIR LABOR STANDARDS ACT, CALIFORNIA LABOR CODE, CALIFORNIA BUSINESS AND PROFESSIONS CODE, AND NEVADA LAW**<br><br>Date: September 24, 2015<br>Time: 10:00 a.m.<br>Place: Courtroom 4 – 17th Floor<br>Judge: Hon. Vince Chhabria |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF UNDISPUTED FACTS ........................................................ 3

    A.    Defendant Receives a Direct, Immediate Financial Benefit from Plaintiffs' Work. ................................................................................................................ 3

    B.    Defendant's Emphasis is Maximizing Revenues, Rather than Education. ............ 4

        1.    Marinello's Quest for Revenues Drives the Marinello Experience of the "Students". ..................................................................................... 4

        2.    The "Students" Receive Minimal Educational Supervision in Defendant's Salons. .............................................................................. 7

    C.    Marinello Exploits Unpaid "Students" to Perform Menial Tasks that Should be Performed by Paid Workers. .................................................................. 7

    D.    Marinello Controls the Wages, Hours, and Working Conditions of the "Student"-Salon Workers, Suffering and Permitting Unpaid Work. ..................... 8

    E.    Defendant's Use of Plaintiffs' Unpaid Labor Allows Defendant to Compete Unfairly by Pricing Services at Levels Below Those That Salons Paying Their Cosmetologists the Minimum Wage Must Charge. .......................... 9

III.  UNDER FEDERAL AND STATE LAW, PLAINTIFFS ARE ENTITLED TO WAGES AND RESTITUTION. ........................................................................... 9

    A.    Under the FLSA, Plaintiffs are Employees. ......................................................... 10

        1.    Under *Portland Terminal* and the Economic Realities Test, Plaintiffs are Employees under the FLSA. ................................................. 10

            (a)    The DOL's Six-Factor Test, Derived from *Portland Terminal,* Supports a Finding that Plaintiffs Are Employees. ...... 13

            (b)    Plaintiffs' Unpaid Labor in Marinello's Salons Confers an Immediate Economic Benefit on Marinello. ............................... 14

            (c)    "Student" Labor Displaces Hourly-Paid Employees. ................... 15

            (d)    Defendant's Focus on Maximizing Profits Resulted in Little Educational Benefit to Plaintiffs. .............................................. 16

    B.    Plaintiffs Are Employees Under California Law. ................................................. 17

        1.    California's Minimum Wage Laws Protect Plaintiffs, following

i

*Martinez v. Combs* ........................................................................................... 17

2. There is No Conflict Between California's Minimum Wage Laws and the Cosmetology Act. ........................................................................ 18

3. Under *Martinez* and Wage Order No. 2, Plaintiffs Are Employees of Marinello. .................................................................................................. 20

4. PAGA Provides the Broadest Definition of Employment ........................ 22

C. Plaintiffs are Entitled to Restitution Under Section 17200. ................................. 22

D. Plaintiffs Are Employees Under Nevada Law. ................................................... 23

IV. CONCLUSION ............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................................9

*Bailey v. Pilots' Ass'n for Bay and River Delaware,*
406 F.Supp. 1302 (E.D. Penn. 1976)................................................................12

*California Pro-Life Council, Inc. v. Getman,*
328 F.3d 1088 (9th Cir. 2003)...........................................................................17

*Carrillo v. Schneider Logistics Trans-Loading & Distribution,*
No. 11-CV-8557, 2014 WL 183956 (C.D. Cal. Jan. 14, 2014)................................21

*Cortez v. Purolator Air Filtration Products Co.,*
23 Cal.4th 163 (2000)........................................................................................22

*Donovan v. New Floridian Hotel, Inc.,*
676 F.2d 468 (11th Cir. 1982) .......................................................................12, 14

*Ford v. Yasuda, et al.,*
No. 13-1961, 2014 U.S. Dist. LEXIS 109540 (C.D. Cal. July 30, 2014) .......................*passim*

*Glatt v. Fox Searchlight Pictures,*
293 F.R.D. 516 (S.D.N.Y. 2013).....................................................................13, 15

*Goldberg v. Whitaker House Cooperative, Inc.,*
366 U.S. 28 (1961) .............................................................................................11

*Guy v. Casal Inst. of Nevada,*
No. 13-2263, 2015 WL 56048 (D. Nev. Jan. 5, 2015) ......................................3, 23

*Harris v. Vector Mktg.,*
753 F.Supp.2d 996 (N.D. Cal. 2010) (Chen, J.) ...................................................13

*Houle v. Duvall,*
111 N.H. 333 (Sup. Ct. N.H. 1971)...........................................................1, 14, 15

*Hutchison v. Clark,*
67 Cal.App.2d 155 (1944)......................................................................17, 18, 19

*Marshall v. Baptist Hospital,*
473 F.Supp. 465 (D. Tenn. 1979).......................................................12, 13, 15, 16

*Marshall v. Baptist Hospital,*
668 F.2d 234 (6th Cir. 1981)...........................................................11, 12, 13

iii

*Martinez v. Combs,*
   49 Cal.4th 35 (2010)..................................................................................*passim*

*Mathis v. Hous. Auth. of Umatilla County,*
   242 F.Supp.2d 777 (D. Or. 2002)..........................................................9

*McDonald v. Ricardo's on the Beach, Inc.,*
   No. 11-9366, 2013 WL 153860 (C.D. Cal. Jan. 15, 2013) ....................22

*McLaughlin v. Ensley,*
   877 F.2d 1207 (4th Cir. 1989)................................................................12

*Reich v. Parker Fire Protection District,*
   992 F.2d 1023 (10th Cir. 1993)..............................................................13

*Reich v. Shiloh True Light Church of Christ,*
   895 F.Supp. 799 (W.D.N.C. 1995)..........................................................12

*Reyes v. Van Elk, Ltd.,*
   148 Cal.App.4th 604 (2007)....................................................................20

*Reynolds v. Bement*
   36 Cal.4th 1075 (2005)............................................................................22

*Rutherford Food v. McComb,*
   331 U.S. 722 (1947) ................................................................................10

*S. G. Borello & Sons, Inc. v. Department of Industrial Relations,*
   48 Cal.3d 341 (Cal. 1989) ........................................................................9

*Salas v. Sierra Chem. Co.,*
   59 Cal.4th 407 (2014), cert. denied, 135 S.Ct. 755 (2014) ....................20

*Skidmore v. Swift & Co.,*
   323 U.S. 134 (1944) ................................................................................13

*Solis v. Laurelbrook Sanitarium,*
   642 F.3d 518 (2011) ..........................................................................11, 12

*Terry v. Sapphire Gentlemen's Club,*
   336 P.3d 951 (Nev. Sup. Ct. 2014) ....................................................3, 23

*Tony and Susan Alamo Foundation v. Secretary of Labor,*
   471 U.S. 290 (1985) ..........................................................................*passim*

*Torres v. Air to Ground Services,*
   300 F.R.D. 386, 395 (C.D. Cal. 2014) ..................................................20

*Walling v. Portland Terminal,*
   330 U.S. 148 (1947) ..........................................................................*passim*

iv

*Williams v. Strickland,*
   87 F.3d 1064 (9th Cir. 1996) ...................................................................................11

*Winfield v. Babylon Beauty Sch. of Smithtown Inc.,*
   No. 13-6289, 2015 WL 1010431 (E.D.N.Y., Mar. 7, 2015) .....................................20

**Statutes, Rules and Regulations**

Fair Labor Standards Act of 1938 ...............................................................................*passim*

Fedederal Rules of Civil Procedure
   Rule 56(a) ...................................................................................................................9
   Rule 30(b)(6) ......................................................................................................3, 4, 5

United States Department of Education
   Title IV of the Higher Education Act. .............................................................4, 5, 15

California Business & Professions Code
   Sections 7301, *et seq.* ...............................................................................................17
   Section 7317 ..............................................................................................................19
   Section 7319.5 ...........................................................................................................18
   Section 7332 ..............................................................................................................19
   Section 7333 ..............................................................................................................19
   Section 7334 ..............................................................................................................19
   Section 7349 ..............................................................................................................19
   Section 7395.1 .....................................................................................................18, 19
   Section 7395.1(a)-(b) ................................................................................................18
   Section 7395.1(c)(5) ..................................................................................................18
   Section 17200 ........................................................................................................1, 22

California Labor Code
   Section 558 ................................................................................................................22
   Section 1194 ..............................................................................................................20
   Section 3071 ..............................................................................................................19

California Department of Industrial Relations
   Minimum Wage Laws ...............................................................................................17

California Private Attorney General Act of 2004.......................................................3, 22

California Code of Regulations
   8 CCR § 11020 ..........................................................................................................21

California Industrial Welfare Commission
   Wage Order No. 2 ...........................................................................................18, 20, 21

The Constitution of the State of Nevada ........................................................................24
   Article 15, Section 16 ...............................................................................................23

**Other Authorities**

The California Barbering and Cosmetology Act..........................................................17, 18, 19, 23

Nevada State Board of Cosmetology
    Nevada Cosmetology Act.......................................................................................................23

A. Carnevale, S. Rose, & A. Hanson, "Certificates: Gateway to Gainful
    Employment and College Degrees" June 2012...........................................................5

## I.      <u>INTRODUCTION</u>

Plaintiffs generate ██████████ in revenue for Defendant through their labor, while enrolled as cosmetology "students" at Marinello.  The question presented in this case is whether Marinello's sale of student labor to the public, in the form of cosmetology services, as part of its private for-profit cosmetology school, confers an "immediate advantage" and "substantial economic benefit" upon Marinello and creates an employment relationship requiring the payment of minimum wages under the Fair Labor Standards Act and California law.  *See Houle v. Duvall*, 111 N.H. 333, 334-35 (Sup. Ct. N.H. 1971) *cert denied* 409 U.S. 891 (1972) (citing *Walling v. Portland Terminal*, 330 U.S. 148, 152-53 (1947), and holding that cosmetology school students servicing the public must be paid the minimum hourly wage if such activities are pursued for "pecuniary gain" by charging customers).  Plaintiffs are owed minimum wages for their work performing services on paying customers, selling Marinello's products, and providing labor essential to the operation of Defendant's for-profit business, such as cleaning Defendant's salons, doing laundry, and performing receptionist duties.  As a matter of law, under the California Labor Code, California Business and Professions Code Section 17200 (BPC), Fair Labor Standards Act (FLSA), and Nevada laws, Defendant owes Plaintiffs wages and restitution.

The parties largely agree as to the material facts.  Defendant double-dips when it comes to Marinello's student/salon workers:  in addition to charging $15,000-$20,000 in tuition for its cosmetology program, Defendant requires Plaintiffs to work as uncompensated cosmetologists in Defendant's salons, which offer services for a fee to the public – at prices lower than nearby competitive salons which pay their staff.  Marinello elects to convert the clinical component of its education program into a second income stream, from which it generates over ██████ in revenues per year.  Defendant requires Plaintiffs to sell Defendant's products and to perform menial janitorial and clerical tasks, all without compensation.  While Plaintiffs work on the salon floor, Defendant exercises significant control over how Plaintiffs perform their work, what services are offered, how customers are served, and how Plaintiffs are required to dress and act.  Defendant also exercises control over Plaintiffs' hours and conditions of work, enforcing punitive measures for non-compliance.

Under the economic realities test set forth in *Walling v. Portland Terminal Co*., 330 U.S. 148, 149 (1947) (*Portland Terminal*) and *Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290, 301 (1985) (*Alamo*), Defendant owes minimum hourly wages for the Plaintiffs' labor in Defendant's salons, as such labor was utilized to generate revenue for Defendant by selling services and products to the public in competition with other commercial cosmetology salons.  The millions of dollars Plaintiffs generate in Marinello's salons form an "integral part" of Defendant's revenues, fundamental to its viability as a business.  Defendant also subordinates Plaintiffs' educational goal of becoming skilled in the cosmetology trades to Defendant's goal of maximizing its salon revenues from paying customers.

For example, Defendant enforces a policy that no customer should be denied service, even if that requires Plaintiffs to stay later than their assigned hours, and even if the requested service is one a "student" has performed successfully many times already.  This only makes it more difficult for "students" to review or complete coursework and practice the full range of new skills required for cosmetology licensing.  Additionally, if Defendant did not charge fees to the public, it is highly likely that, pursuant to basic tenets of price and demand, demand for services would increase, resulting in more live models for students to work on and diversity of services that are better tailored to their educational development.  Instead, students are required to wait around in the salon for paying customers, reviewing written materials or performing menial tasks necessary to running Defendant's salons.

Further, Defendant's staffing policies provide only the bare minimum of instructors.  Marinello does not even require instructors to be present on the salon floor when "students" are working, and does not  verify to what degree salon instructors provide actual training and oversight.  Ultimately, Plaintiffs performed the same work as paid cosmetologists, but without compensation.  The menial tasks Defendant demanded of Plaintiffs in the salons cannot be characterized as anything other than compensable work, displacing Defendant's need to hire paid employees to perform the essential support functions of its salons, including cleaning, sweeping and mopping, taking out the trash, washing and folding laundry, working in the "dispensary" stocking, inventorying, and handing out supplies, and performing receptionist duties.

Under California law, which is more protective of workers' wages than the FLSA, Plaintiffs are employees under the three-part test in *Martinez v. Combs*, 49 Cal.4th 35, 64 (2010). Defendant exercises control over their wages, hours and working conditions, and/or suffers or permits Plaintiffs to work on Marinello's behalf.  The Industrial Welfare Commission (IWC) wage orders, as enforced by the Labor Commissioner, define the employment relationship in California – not the cosmetology industry.  *See Ford v. Yasuda, et al.*, No. 13-1961, 2014 U.S. Dist. LEXIS 109540, *12-13 (C.D. Cal. July 30, 2014) (discussing cosmetology student-salon workers under *Martinez v. Combs*).  The Private Attorneys General Act (Labor Code section 2698, *et seq.*) (PAGA) and BPC have even broader protections – extending to any "person" causing violations or unjustly enriched.

Lastly, Nevada's minimum wage requirement is enshrined in the state constitution and applies the same "economic realities" test of employment as the FLSA.  *See Terry v. Sapphire Gentlemen's Club*,  336 P.3d 951, 958 (Nev. Sup. Ct. 2014).  As a result, Plaintiffs' entitlement to minimum wages under Nevada law and the FLSA present identical issues.  Nevada's cosmetology regulations do not exempt Plaintiffs from Nevada's minimum wage protections. *See Guy v. Casal Inst. of Nevada*, No. 13-2263, 2015 WL 56048, *3 (D. Nev. Jan. 5, 2015).

Plaintiffs' motion for summary judgment should be granted and the Court should find Defendant liable for wages under state and federal law.

## II.   STATEMENT OF UNDISPUTED FACTS

### A.   Defendant Receives a Direct, Immediate Financial Benefit from Plaintiffs' Work.

Defendant is a privately-held, for-profit business that operates a chain of over 50 cosmetology schools under the name "Marinello Schools of Beauty" (Declaration of Chaya Mandelbaum ("Mandelbaum Decl."), Exh. A [Excerpts of Fed.R.Civ.P. 30(b)(6) Deposition of Michael Flecker ("Flecker Dep.")],[1] 33:2-7, 40:12-14; Plaintiffs' Request for Judicial Notice, Exh. A).  A key portion of Marinello's business is devoted to operating salons staffed by

---

[1]  Excerpts of others' depositions will be cited in similar manner.

1    "students," who provide cosmetology services to the public (Mandelbaum Decl., Exh. B

2    [Excerpts of Fed.R.Civ.P. 30(b)(6) Deposition of Nagui Elyas ("Elyas Dep.")], 58:19-59:14;

3    Exh. C, p.1).  Marinello publicly markets its salons as offering "exclusive Salon and Spa Services

4    to their guests" "without you having to spend through your nose for them," providing a full range

5    of salon services for a fee that it advertises is less than competitor salons (Plaintiffs' RJN, Exhs.

6    B and C).  In addition to selling its "student"-provided salon services to the public, Marinello

7    requires its "students" to sell cosmetology products.  Defendant's annual revenue was

8    ████████ in 2012 and ████████ in 2013 (Flecker Dep., 45:19-47:5; Mandelbaum Decl.,

9    Exh. D, p.2).  Defendant took in over ████████ each year from salon revenue, based on services

10   performed by students and on students' sale of cosmetology products, constituting between ██

11   and ██ % of its total annual revenue in 2012 and 2013 (id.).

**B.    Defendant's Emphasis is Maximizing Revenues, Rather than Education.**

**1.    Marinello's Quest for Revenues Drives the Marinello Experience of the "Students".**

15   Marinello's President Nagui Elyas, when he was Chief Operating Officer, exhorted all

16   regional operation managers to keep the salons open for long, continuous hours, as it is

17   Marinello's goal to "██████████████████████████████████████████

18   ██" (Elyas Dep., 58:19-59:14; Mandelbaum Decl., Exh. C, p.2).  His memorandum admits,

19   "████████████████████████████████████████████████

20   ████████" (Mandelbaum Decl., Exh. C, p.1) (emph. added).

21   The reference to "90/10 cash collection" in Elyas's statement pertains to the fact that

22   Defendant relies on student-generated salon revenues to qualify for funding from federal student

23   loans under Title IV of the Higher Education Act.  *See* 20 USC 1094(a)(24). In order for students

24   to be eligible for federal aid, Title IV requires that a for-profit private education company such as

25   Marinello derive at least ten percent of its revenues from sources other than Title IV funding –

26   hence, the so-called "90/10 rule."  *Id.*  While any source of cash collected (*i.e.* before subtracting

27   expenses to determine actual revenues or net income) qualifies for this ten percent, including

28   payment of tuition by students, Defendant's business model relies on meeting the federal

4

1  requirement through the proceeds of the uncompensated labor of its "students" (Elyas Dep.,

2  68:18-70:15).  "Students" are charged between $15,000 to 20,000 for tuition (Mandelbaum Decl.,

3  Exh. E [Excerpts of Fed.R.Civ.P. 30(b)(6) Deposition of Sharlyn Ada ("Ada Dep.")], 53:15-18);

4  most could never pay such tuition, or repay loans, without the federal aid for which Defendant

5  qualifies by virtue of the "student"-salon worker-generated revenues (Mandelbaum Decl., Exh. F,

6  p. 22) (Title IV funds comprised 79-85% of funds received at San Francisco, Los Angeles, and

7  Las Vegas locations); *see also* A. Carnevale, S. Rose, & A. Hanson, "Certificates: Gateway to

8  Gainful Employment and College Degrees," June 2012, Georgetown University Center on

9  Education and the Workforce, at p.25 (finding that women with a cosmetology certificate earn

10  less than those with only a high school diploma) (*available at*

11  https://cew.georgetown.edu/report/certificates/).

12       Marinello increases salon revenues by requiring the salons to be open to the public for

13  long hours, even if this requires a student to stay past her assigned schedule or do her coursework

14  at home, outside the prescribed tuition hours (Elyas Dep., 74:1-76:20; Mandelbaum Decl.,

15  Exh. G, p.3; Exh. H [Excerpts of Deposition of Karyn Laitis ("Laitis Dep.")], 62:17-64:17,

16  112:4-113:1; Exh. I, p.1).  Marinello's customer service requirements (which are called the

17  "Marinello Method") and demands from the company's executives require that students provide

18  whatever services a customer requests, regardless of whether performing the service is

19  educationally beneficial to the student, *e.g.*, whether or not the student is already fully trained and

20  proficient on performing a particular service (Mandelbaum Decl., Exh. G, p.3; Laitis Dep., 45:12-

21  46:19; Exh. I, p.1; Exh. J, p.1; Elyas Dep., 72:4-10, 72:19-73:2, 76:21-77:1; Ada Dep., 147:1-16;

22  Flecker Dep., 154:2-7).  For example, Plaintiff Gonzalez was generally assigned men's haircuts,

23  and not given much opportunity to learn other skills needed for cosmetology proficiency

24  (Mandelbaum Decl., Exh. K [Excerpts of Deposition of Bryan Gonzalez ("Gonzalez Dep.")],

25  84:22-24, 85:4-18; Ada Dep., 142:14-143:12).  Marinello enforces the rule that "students" must

26  serve any customer, telling "students" they will be sent home if they refuse to perform a

27  requested service (Gonzalez Dep., 84:25-85:3).

28  ///

1    Marinello promotes a sales culture, rather than an educational one.  Students must drum

2  up customers from their family and friend networks to market Marinello's brand (Flecker Dep.,

3  146:17-22; Elyas Dep., 135:20-136:3; Ada Dep., 116:9-24).  Marinello provides a quota to

4  students for the number of customers serviced and number of products sold (Ada Dep., 117:7-

5  120:9; Mandelbaum Decl., Exh. L, p.4).

6    Marinello does not, however, offer salon services to the public for free, or for the costs of

7  goods used, although nothing in the cosmetology board licensing exam or vocational school

8  guidelines requires that Marinello charge a fee (Ada Dep., 112:7-113:6, 145:13-146:20).  In fact,

9  "students" can log the "clock hours" necessary to sit for the cosmetology board licensing exam

10 by working on mannequins, models, fellow students, or non-paying customers – there is nothing

11 in the regulations that require that "clock hours" or practical training be accomplished through

12 paying customers (*id*., at 112:7-113:6).  There is no added value to the "students" from working

13 on paying customers versus performing free services, as "the customer service concept would be

14 the same" (*id*.).  When there were insufficient customers, students were required to wait around

15 in the salon.  Because Defendant's "practical training" in the salons required paying customers,

16 Plaintiffs often had to spend their waiting time reviewing materials or performing menial tasks

17 necessary to running Defendant's salons, instead of receiving hands-on training (Mandelbaum

18 Decl., Exh. M [Excerpts of Deposition of Jacqueline Benjamin ("Benjamin Dep.")], 262:4-

19 271:12; Gonzalez Dep., 83:13-84:3).

20    "Students" are told to upsell products and services to increase Defendant's revenues (Ada

21 Dep., 177:12-178:16).  Marinello dictates the types and brands of products the "student"-salon

22 workers sell.  "Students" do not receive any payments or commissions from Marinello for selling

23 products, although Marinello recognizes students who sell high volumes of products or services

24 through certificates or free products from vendors (*id*., at 120:10-122:8, 178:19-180:19).

25    Marinello even profits from required "student" purchases - Marinello charges a ██%

26 markup on books and supplies it requires of its enrollees (Flecker Dep., 49:12-19, 61:23-63:8).

27 ///

28 ///

2.      **The "Students" Receive Minimal Educational Supervision in Defendant's Salons.**

Marinello does not require that its instructors be present and assisting students on the salon floor any time they are performing salon services.  Instead, Marinello only requires that there be one instructor for every 25 students present at the school (Laitis Dep., 107:7-109:8).  Marinello considers this to be an aggregate ratio, such that the instructor must be present somewhere on the campus, but is not required to be providing supervision in the salon (*id*., at 108:4-109:8; Elyas Dep., 89:2-92:5).  There is no policy requiring a minimum instructor to student ratio on the salon floor, though Marinello suggests having at least one instructor present (Elyas Dep., 94:2-5, 95:19-97:9).  Moreover, Marinello has no way of verifying that instructors are actually present on the salon floor providing instruction and guidance, rather than on some other part of the campus, or leading other students through written materials (Ada Dep., 103:7-106:7).  In fact, students are often unsupervised while in the salon, and often lack direct, hands-on supervision and instruction (Benjamin Dep., 86:15-23, 166:23-167:6, 288:23-289:4; Gonzalez Dep., 59:22-60:24, 64:25-65:24, 70:21-71:24; Mandelbaum Decl., Exh. N [Excerpts of Deposition of Taiwo Koyejo ("Koyejo Dep.")], 49:21-50:13, 52:4-13, 54:5-15).  Marinello has received numerous complaints from students regarding inadequate instruction in the salon (Ada Dep., 94:19-95:25, 97:25-98:14; Mandelbaum Decl, Exh. O, p.2; Mandelbaum Decl., Exh. P, p.2).

C.      **Marinello Exploits Unpaid "Students" to Perform Menial Tasks that Should be Performed by Paid Workers.**

"Student"-salon workers are required to perform many menial tasks for which they do not need to enroll in cosmetology school or obtain a cosmetology license, and which they do not need to practice to succeed in their chosen field (Benjamin Dep., 97:9-99:22, 100:1-101:8, 101:16-102:16, 163:12-23, 182:23-183:19, 263:17-264:19, 267:15-268:2; Gonzalez Dep., 78:8-15, 79:2-15; Elyas Dep., 117:21-118:9, 125:19-128:24, 141:12-142:2, 143:11-24, 146:4-15; Ada Dep., 149:6-154:2, 155:19-159:4, 168:13-169:19).  These include washing and folding laundry, working in the dispensary supplying products to other students, cleaning and taking out the trash, and performing receptionist duties (*id.*).  Plaintiff Benjamin and the students in her class had to

1  fold laundry every night they were at Marinello (Benjamin Dep., 267:15-268:2).  Gonzalez

2  regularly cleaned, swept, mopped, and took out the trash (Gonzalez Dep., 78:8-15, 79:2-15).

3  Benjamin worked at the front desk to fill in for the receptionist, an hourly paid employee of the

4  company (Benjamin Dep., 182:23-183:19).  This work performed by the students would have

5  otherwise been performed by hourly-paid employees (Ada Dep., 154:20-155:15).

6       **D.     Marinello Controls the Wages, Hours, and Working Conditions of the**
7            **"Student"-Salon Workers, Suffering and Permitting Unpaid Work.**

8           Marinello exerts complete control over the "students" while they work in the salons.

9  Handbooks set forth the company's policies for standards of conduct, including highly specific

10 regulations regarding manner of dress and comportment (Ada Dep., 190:5-195:20; Mandelbaum

11 Decl., Exh. Q, pp.4-5).  "Student"-salon workers are required to purchase Marinello t-shirts and

12 comply with the dress code in order to promote the Marinello brand (Ada Dep., 188:10-190:16).

13 Students are told to purchase a standard kit of cosmetology supplies for use while serving

14 Marinello's customers (*id.*, at 79:19-82:4).  Those kits, which cost several thousand dollars,

15 include specific tools and equipment such as scissors, hot irons, blow dryers, cosmetics, and

16 combs (Koyejo Dep., 89:16-90:10; Mandelbaum Decl., Exh. R).  Marinello also requires

17 "students" to purchase Marinello's materials and books, which include specific guidelines and

18 rules on the "Marinello Method" and "Marinello culture" (Ada Dep., 182:12-183:11;

19 Mandelbaum Decl., Exh. S, p.18).

20          Marinello sets schedules of work and requires students to clock in and out (Ada Dep.

21 216:2-17).  Marinello enforces these schedules by charging students hefty fines for absences and

22 tardiness – even if the student is only a few minutes late (Koyejo Dep., 139:12-25, 152:13-

23 153:10).  Gonzalez was fined $11.00 per hour he was absent, and was charged an extra $7,000 on

24 top of his already-expensive tuition as a result (Gonzalez Dep., 107:3-108:7; *see also* Koyejo

25 Dep., 139:12-145:1).

26          Marinello also penalized students for failing to follow its policies, including those

27 regarding customer service, through administrative write-ups and suspensions.  Plaintiff Koyejo

28 was disciplined for "allowing guests to call her cell phone and scheduling appointments with her,

instead of the front desk," for using a product on a client she was servicing that Marinello had not approved, and for setting out a tip cup (Koyejo Dep., 174:25-180:4; Mandelbaum Decl., Exh. T, p.2).  Koyejo was suspended for several days for receiving a service from another student, despite having received instructor permission (Koyejo Dep., 179:8-14; Mandelbaum Decl., Exh. T, p.3).

      **E.**    **Defendant's Use of Plaintiffs' Unpaid Labor Allows Defendant to Compete Unfairly by Pricing Services at Levels Below Those That Salons Paying Their Cosmetologists the Minimum Wage Must Charge.**

Marinello advertises its salon services to the public by claiming that its "signature services are classic, trendy and affordable" (Plaintiffs' RJN, Exh. D).  Marinello's advertising to the public emphasizes the lower price to attract customers (Ada Dep., 64:23-65:24).  The prices Defendant charges the public are set by the company's pricelists and are lower than what licensed cosmetologists at competing salons charge (Ada Dep., 73:14-23; Mandelbaum Decl., Exh. U). Marinello periodically offers coupons to further undersell the competition, instructing students to "████████████████████████████████████████████████████████████", (Laitis Dep., 38:22-39:12; Mandelbaum Decl., Exh. V, p.2).  The fees for services are cheaper than other salons because they are performed by the unpaid labor force –*i.e.,* the "students" (Ada Dep., 72:3-73:8).

## III.    UNDER FEDERAL AND STATE LAW, PLAINTIFFS ARE ENTITLED TO WAGES AND RESTITUTION.

Summary judgment should be granted if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1986).  In this case, Plaintiffs are entitled to summary judgment where the only inference that can be drawn from the undisputed material facts is that Plaintiffs are employees under federal and state law.  *See, e.g., S. G. Borello & Sons, Inc. v. Dep't of Indust. Relations*, 48 Cal.3d 341, 349 and 367-68 (Cal. 1989); *Mathis v. Hous. Auth. of Umatilla County*, 242 F.Supp.2d 777, 785-86 (D. Or. 2002) (granting plaintiff's motion for partial summary judgment that, under the economic realities test, plaintiff was an employee under the FLSA, not independent contractor).  Plaintiffs are entitled to compensation, at a minimum, for the time they spent servicing Defendant's paying customers and performing

9

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: EMPLOYMENT UNDER THE FLSA, CALIFORNIA LABOR CODE, CALIFORNIA BUSINESS AND PROFESSIONS CODE, AND NEVADA LAW CASE NO. CV 13-04993-VC

other tasks for Defendant's pecuniary gain and that are necessary to Defendant's operation of its salons, such as cleaning, washing and folding laundry, scheduling clients, and performing receptionist duties.

### A.   Under the FLSA, Plaintiffs are Employees.

#### 1.   Under *Portland Terminal* and the Economic Realities Test, Plaintiffs are Employees under the FLSA.

There is no rigid, categorical exclusion of vocational students, trainees, interns, and volunteers from the FLSA.  *See generally Rutherford Food v. McComb*, 331 U.S. 722, 726-27 and 729 (1947) (noting that the FLSA applies "to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category.") (quoting *Portland Terminal*).  In *Portland Terminal*, the Supreme Court considered whether prospective railroad brakemen undergoing a short training course were employees for purposes of the FLSA. *Portland Terminal*, 330 U.S. at 149.  The trainees were only "permitted to do actual work under close scrutiny."  *Id*.  Moreover, the training did not "displace any of the regular employees, who do most of the work themselves, and must stand immediately by to supervise whatever the trainees do."  *Id*., at 149-150.  Key to the decision was the Court's finding that "the railroads receive no 'immediate advantage' from any work done by the trainees."  *Id.*, at 153.  In declining to extend the FLSA to the trainees, *Portland Terminal* relied upon the absence of any economic value in the work performed by the trainees during a brief training period, as such work did "not expedite the company business, but may, and sometimes does, actually impede and retard it." *Id*., at 150.

While *Portland Terminal* involved a seven- or eight-day training program, it expressly reserved for future cases situations where an employer, in violation of the FLSA, "accepted the services of beginners at pay less than the legal minimum" for a longer term and received an "immediate advantage" from such labor.  *Id.*, at 152-53.

Building on *Portland Terminal*, in *Alamo*, the Supreme Court held that "volunteers" for a religious foundation who labored, sometimes for several years, without any agreement or expectation of cash compensation were employees under the FLSA.  471 U.S., at 301-02.  There,

10

1   the Secretary of Labor was unable to find any individual who considered their labor to be

2   anything other than voluntary.  *Id.*, at 300.  Nonetheless, the Court stated that this did not end the

3   inquiry, as "the test of employment under the Act is one of 'economic reality.'" *Id.*, at 301

4   (quoting *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961)). The Court

5   distinguished this case from *Portland Terminal* based on the longer duration of the unpaid work.

6   *Id.*  Moreover, the Foundation's commercial businesses, including service stations, retail clothing

7   and grocery outlets, and other enterprises were largely staffed by its "volunteers."  *Id.*, at 292 and

8   302.  Even though there was no agreement for or expectation of compensation, the Court stated

9   that the rights under the FLSA are unwaivable and apply "even to those who would decline its

10  protections."  *Id.*  If an employee could be forced to waive their rights by agreeing not to be paid,

11  "employers might be able to use superior bargaining power to coerce employees to make such

12  assertions, or to waive their protections under the Act."  *Id.*

13       The Ninth Circuit has not yet addressed the issue of whether vocational students

14  providing services to the public for a fee are "employees" under the FLSA.[2]  Here, unlike the

15  short-term program in *Portland Terminal,* and applying the economic realities test as in *Alamo,*

16  the Court should find the Marinello "student"-salon workers were employees when they were

17  generating a direct and immediate benefit for Defendant.  *See Alamo*, 471 U.S. at 293-94;

18  *Goldberg*, 366 U.S. at 31-33 (applying economic realities test and holding members of

19  cooperative with ownership interest were also FLSA employees); *Marshall v. Baptist Hospital*,

20  668 F.2d 234, 236 (6th Cir. 1981) (vocational school radiology students properly found to be

21  FLSA employees for portion of their school program's hours spent in hospital as their labor

22  conferred a "substantial economic benefit" upon the hospital); *Solis v. Laurelbrook Sanitarium*,

23  642 F.3d 518, 524 (2011) (no *per se* exclusion of the activities of vocational school students from

24  FLSA; rather, economic realities test determines if FLSA coverage exists and no FLSA

25       [2]  The Ninth Circuit recognized in *Williams v. Strickland*, 87 F.3d 1064 (9th Cir. 1996),
26  that the analysis of whether a volunteer is an employee under the FLSA is grounded in the
    *Portland Terminal* factors and the principles set forth in *Alamo Foundation*.  However, the Ninth
27  Circuit has yet to address an issue of FLSA employment in the context of trainees or vocational
28  school "students".

11

employment relationship created when the students' labor does not provide any substantial economic value to the alleged employer); *McLaughlin v. Ensley*, 877 F.2d 1207, 1209-10 (4th Cir. 1989) (holding that the proper legal inquiry was whether the alleged employer benefitted from the relationship, including factors such as the nature of the training and the advantage to the employer in obtaining better workers and aid to his regular employees); *Reich v. Shiloh True Light Church of Christ*, 895 F.Supp. 799, 818 (W.D.N.C. 1995) (finding that the defendant church was employer under the FLSA, as the church was the beneficiary of work done by minors on construction sites through church vocational program); *Bailey v. Pilots' Ass'n for Bay and River Delaware*, 406 F.Supp. 1302, 1307 (E.D. Penn. 1976) (holding that apprentice trainee was an employee under the FLSA where his labor was of immediate benefit to the defendant, despite the fact that the training had some educational value).

In evaluating the economic realities, to determine whether a vocational training program creates an employment relationship, the Court does not rely on the labels the parties previously ascribed to themselves – *i.e.*, school and student.  *See Laurelbrook*, 642 F.3d at 524; *Reich*, 895 F.Supp. at 815.  Whether the parties, or Defendant, had the intention to create an employment relationship "is irrelevant; it is sufficient that one person 'suffer or permit (another) to work.'" *Donovan v. New Floridian Hotel, Inc*., 676 F.2d 468, 470-71 (11th Cir. 1982) (internal citation and quotation omitted).

In *Marshall v. Baptist Hospital*, 473 F.Supp. 465, 468 (D. Tenn. 1979), *rev'd on other grounds*, 668 F.2d 234 (6th Cir. 1981), the court examined the "economic realities" of the relationship between trainees engaged in clinical training in radiologic technology at a hospital as part of a two-year vocational program administered by a junior college.  As in the case at bar, in *Marshall,* "trainees simply continued to be assigned to work wherever they were needed without regard to their becoming proficient in all areas of the various X-ray procedures."  *Id.* at 476.  The court held that the student-trainees were employees under the FLSA, finding that the defendant received direct and substantial benefit from their work and that the educational value of the program was reduced because the hospital provided little supervision.  *Id*. at 476-77.  This case is like *Marshall*, because Defendant "exploited the training program, turning it to its own

1    advantage." *Id.* at 477.  As in *Marshall,* Marinello benefited from Plaintiffs' repetitive work, and

2    Defendant sacrificed education for revenues in an environment where "student"-salon workers

3    were provided minimal supervision.

4                    **(a)    The DOL's Six-Factor Test, Derived from *Portland Terminal,***
5                    **Supports a Finding that Plaintiffs Are Employees.**

6            A six-factor test derived from *Portland Terminal* by the Department of Labor's Wage and

7    Hour Division ("DOL") has been adopted by the California Division of Labor Standards

8    Enforcement ("DLSE") and discussed by this Court under similar circumstances.  *See Harris v.*

9    *Vector Mktg.*, 753 F.Supp.2d 996, 1005-06 (N.D. Cal. 2010) (Chen, J.); *see also Ford v. Yasuda*,

10   No. 13-1961, 2014 U.S. Dist. LEXIS 109540 (C.D. Cal. July 30, 2014) (considering the DOL's

11   six-factor test to determine whether cosmetology school students are employees under FLSA).

12   The DOL factors are entitled to deference.  *See, e.g., Glatt v. Fox Searchlight Pictures*, 293

13   F.R.D. 516 (S.D.N.Y. 2013).[3]  The six factors include:

14           •   The training, even though it includes actual operation of the
15               facilities of the employer, is similar to training which would be
                 given in an educational environment;

16           •   The training is for the benefit of the trainee;
17
18           •   The trainee does not displace regular employees, but works under
                 close supervision of existing staff;

19           •   The employer that provides the training derives no immediate
20               advantage from the activities of the trainee and on occasion its
21               operations may actually be impeded;

22           •   The trainee is not necessarily entitled to a job at the conclusion of
                 the training; and

23

24   _____

25           [3]  Similarly, in *Reich v. Parker Fire Protection District*, 992 F.2d 1023, 1026 (10th Cir.
     1993), the court found that the DOL six factor test was entitled to deference under *Skidmore v.*
26   *Swift & Co.,* 323 U.S. 134, 140 (1944) ("We consider that the rulings, interpretations and
     opinions of the Administrator under this Act, while not controlling upon the courts by reason of
27   their authority, do constitute a body of experience and informed judgment to which courts and
     litigants may properly resort for guidance.")

28

1     •   The employer and the trainee understand that the trainee is not
           entitled to wages for the time spent in the training.[4]

2

3 (RJN, Exh. E).  The DOL's Field Operations Handbook emphasizes that *each* factor of the test

4 must be met to exclude a trainee or student from coverage under the FLSA (*id.*). Under the

5 DOL's six-factor *Portland Terminal* test, Plaintiffs are employees under the FLSA, because their

6 work immediately benefitted Defendant by generating revenues, competed with and displaced

7 paid employees, and because Plaintiffs received minimal supervision or educational benefit.

8              **(b)**     **Plaintiffs' Unpaid Labor in Marinello's Salons Confers an
                        Immediate Economic Benefit on Marinello.**

9

10       The revenues that Marinello receives from the students' labor in its salons, including the

11 sale of services and products, are an "integral part" of Marinello's "███████████████

12 █████████████████" (Mandelbaum Decl., Exh. C, p.1). The "student" work in the

13 salon generated more than $█████ in 2012 and 2013 – ultimately ███████% of the

14 company's revenues (Mandelbaum Decl., Exh. D, p.2).  Without the revenues from the

15 "students'" salon work, Marinello ████████████████████ 2013, and ████████

16 ████████████████ 2012 (just $█████████ instead of the $████████ it made with

17 the "student"-labor generated revenues) (*id.*).

18       *Portland Terminal* establishes that "a learner who contributes some measurable gain to

19 the person or company for whom he works" is properly treated as an employee for minimum

20 wage purposes.  *Houle v. Duvall*, 111 N.H. 333, 334-35 (1971).  The New Hampshire Supreme

21 Court in *Houle* found that students of a cosmetology school working on paying customers are

22 engaged in the dual pursuits of education and "pecuniary gain" and must be compensated with

23 the minimum wage "because the services which hairdressing students render to paying customers

24 result in direct and immediate pecuniary gain to hairdressing schools."  *Id.* at 334.

25         [4]  The last factor is not here relevant and should be disregarded – recall *Alamo,* 471 U.S.

26 at 301-02: "the purposes of the [FLSA] require it be applied even to those who would decline its
protections."  *See also Donovan v. New Floridian Hotel, Inc*., 676 F.2d 468, 470-71 (11th Cir.

27 1982) (the parties' intention to create an employment relationship "is irrelevant".) (internal
citation and quotation omitted).

28

1    The Court should find *Houle* persuasive, and determine as a matter of law that Defendant

2  fails the "immediate advantage" prong of the six-prong DOL test for exemption from the

3  ordinary requirement to pay wages.  Marinello is double-dipping – it already receives over $█

4  █████ a year in tuition and fees to provide education services, but elects to convert the hands-on,

5  practical training component of the program into a second profit generator, to the tune of over $█

6  █████ annually.  Marinello's goal is to "maximize the school's revenues", to the detriment of its

7  "students".

8    Plaintiffs' labors provide Marinello another ongoing economic benefit:  revenues from

9  "student" work enable Defendant to maintain its business model, heavily reliant on federal

10  student aid money under Title IV.  To maintain its eligibility to receive Title IV funds, ten

11  percent of the school's revenues must originate from sources other than federal loans.  In this

12  case, the 10% comes largely from revenues generated in the salons by "student" work.

13                    **(c)**        **"Student" Labor Displaces Hourly-Paid Employees.**

14    Among its primary objectives, the FLSA seeks to block the negative effect on workers'

15  wages of other workers' sub-minimum wage labor.  The FLSA aims at preventing use of free

16  labor that would cause "the displacement of regular employees or applicants and the exploitation

17  of unorganized laborers."  *Marshall*, 473 F.Supp. at 468.  Marinello's model displaces hourly

18  employees who would otherwise be required to perform janitorial and clerical duties that

19  "students" are coopted into performing (Ada Dep., 154:20-155:15, 172:17-25).  Defendant's non-

20  payment of wages for such tasks also enables unfair competition with salons operating with paid

21  staff.  *See Alamo*, 471 U.S. at 299 (observing that the defendant religious organization's

22  "businesses serve the general public in competition with ordinary commercial enterprises" and its

23  use of unpaid "volunteer" labor would give them and "similar organizations an advantage over

24  their competitors"); *Glatt*, 293 F.R.D. at 534 (noting the FLSA "also protects businesses by

25  preventing anticompetitive behavior. An employer is not to be allowed to gain a competitive

26  advantage by reason of the fact that his employees are more willing to waive [FLSA claims] than

27  are those of his competitor.") (internal citation and quotation omitted).

28  *///*

1

### (d)   Defendant's Focus on Maximizing Profits Resulted in Little Educational Benefit to Plaintiffs.

2   Marinello chooses to maximize salon revenues at the expense of the value of the

3   education Marinello's "students" receive.  Marinello requires that its salons stay open

4   continuously for long hours to ensure that any customer can be served.  Marinello also enforces a

5   strict policy of never refusing service to a customer - regardless of what skills the "student" needs

6   to practice (Mandelbaum Decl., Exh. G, p.2; Exh. J, p.1).  Students are required to service

7   customers in the salon even if this means they will not have time to review materials or complete

8   written assignments, or will have less time and support in studying for the state board's licensing

9   exams (Laitis Dep., 62:17-64:17; Mandelbaum Decl., Exh. W, p.1; Exh. I).  Marinello admits that

10   the experience of working on a live model is the same, whether the person is paying for the

11   service or not (Ada Dep., 112:23-113:6).  If Marinello focused on the students' education, instead

12   of its own revenues, it could bring in models, have students work on other students, or let

13   students work on the full range of skills they most need to practice with the many potential

14   clients willing to receive a free haircut or other service.  Students needing extra "clock hours"

15   could work on mannequins (Ada Dep., 108:15-109:17).[5]

16   Plaintiffs' assignment to janitorial and clerical tasks yields no educational benefit. If an

17   employer could argue that workers must "learn to clean" or "learn to answer phones" and so need

18   not be paid, then our minimum wage laws would be gravely undermined.

19   Marinello does not require that instructors be present on the salon floors providing direct

20   supervision and training to "students" performing services in the salons (Elyas Dep., 89:2-92:5,

21   94:2-5, 95:19-97:9; Laitis Dep., 108:4-20; Ada Dep., 103:7-106:7). As such, Marinello enrollees

22   are "shortchanged educationally," as in *Marshall*, 473 F.Supp. at 476-77. They are paying for an

23   education, but essentially teaching themselves while generating revenues for Defendant.

24   ///

25   ///

26

27   _____

28   [5]  For the same reasons, the training provided in Defendant's salons is not similar to that provided in an "educational environment."

**B.**     **Plaintiffs Are Employees Under California Law.**

**1.**     **California's Minimum Wage Laws Protect Plaintiffs, following _Martinez v. Combs_.**

"Employment" under California law is defined in *Martinez v. Combs*, 49 Cal.4th at 35. (*See also* discussion in Plaintiffs' Opposition to Motion to Dismiss, Dkt. No. 28).  Neither the California Cosmetology Act, nor a 1944 opinion from the California Court of Appeal, trump the California Supreme Court's 2010 decision in *Martinez*, which applies the IWC Wage Orders in determining whether workers are "employees" in California.  *See Ford v. Yasuda*, No. 13-1961, 2014 U.S. Dist. LEXIS 109540 (C.D. Cal. July 30, 2014).

In *Ford v. Yasuda*, the Court denied a for-profit cosmetology school's motion to dismiss, concluding that cosmetology "student"-salon workers may be "employees" under the IWC wage orders, applying *Martinez. Id.*, at *12-14.  Similar to the present case, the *Ford* plaintiffs alleged that during their enrollment, they performed services on paying members of the general public, selling them products, and engaging in janitorial and clerical work on behalf of the school, reflecting an employment relationship.  *Id.*, at *4.  The Court rejected the defendant's argument that the students could not be "employees" under California law based upon the text of the Cosmetology Act, Cal. Bus. & Prof. Code §§ 7301, *et seq.*, based on *Hutchison v. Clark*, 67 Cal.App.2d 155 (1944), or based on DLSE publications that appeared to rely on *Hutchison* and were issued before *Martinez.  Hutchison* had relied on the Cosmetology Act to find "students" could not be employees as a matter of law.

This Court should follow *Ford*'s unequivocal holding that "[a]fter *Martinez, Hutchison* is no longer good law."  *Ford*, 2014 U.S. Dist. LEXIS 109540, at *13; *see also California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1099 (9th Cir. 2003) (where there is convincing evidence that the California Supreme Court would reject the California Court of Appeal's interpretation of California law, California federal courts are not bound by the Court of Appeal decision).  *Ford* explained, 2014 U.S. Dist. LEXIS 109540, at *13 (emph. in orig.):

> *Hutchison* was based on the assessment that there was a bright line between students and employees that limited the reach of the IWC. *See Hutchison*, 67 Cal. App. 2d at 159-61. That reasoning is incompatible with *Martinez's* holding that the IWC has the authority to *define* what constitutes employment for the purposes of

17

1
2

California's minimum wage and overtime laws. Further, *Hutchison's* clear delineation between students and employees cannot be squared with the more expansive definition of employment established by the IWC.

3   Based on *Martinez*, "the California Supreme Court would hold that [beauty school] students may

4   be properly classified as its employees, if they are within the definition of 'employment'

5   established by the IWC" and, specifically, "IWC Wage Order No. 2 which applies to the

6   'personal service industry.'"  *Id*.  The *Hutchison* conclusion that "student"-salon workers are

7   categorically non-"employees" is based on a superseded concept of employment and a *per se*

8   categorical separation of "employees" on the one hand and students or trainees on the other.

9
10

### 2.   There is No Conflict Between California's Minimum Wage Laws and the Cosmetology Act.

11       The Cosmetology Act does not prohibit paying students for work performed on the

12   public.  *Ford*, 2014 U.S. Dist. LEXIS 109540, at \*15 (citing Cal. Bus. & Professions Code

13   § 7319.5); *see also* discussion in Dkt. No. 28, at pp. 3-8.  Instead, the employment status of

14   individuals regulated by the Cosmetology Act is governed by California's generally-applicable

15   body of employment law.

16       The relevant provisions of the California Cosmetology Act are silent regarding whether

17   cosmetology students can be paid, and the standard minimum wage applies.  *Ford*, 2014 U.S.

18   Dist. LEXIS 109540, at \*11.  Business and Professions Code section 7319.5 says, "students

19   engaged in performing services on the public while enrolled in a school approved by the board

20   shall not be required to be licensed under this chapter if they perform those services at the

21   approved school in which they are enrolled."  Unlike Section 7395.1, which specifically

22   references working as an "unpaid extern" at an outside establishment,[6] Section 7319.5 contains

---

23       [6]  Marinello's enrolled "students" are not externs under the California Cosmetology Act
24   (Ada Dep., 199:15-200:14).  Under the California Cosmetology Act, student externs work at a
     licensed cosmetology establishment and receive course credit.  Bus. & Prof. Code § 7395.1(a)-
25   (b).  Among the many stringent requirements (which Defendant here does not meet), an extern
     must be directly supervised by a licensed cosmetologist or barber and there must be a ratio of at
26   least *one extern for every four licensed cosmetologists* – not 25 student-workers to one
     cosmetologist.  Bus. & Prof. Code § 7395.1(c)(5).  Moreover, "no regularly employed licensee
27   shall be displaced or have his or her work hours reduced or altered to accommodate the
     placement of an extern in an establishment."  *Id.*
28

18

no prohibition on payment while working for a school salon.  Defendant's alleged authority for the proposition that it would be unlawful to pay cosmetology students, Bus. & Prof. Code § 7349, addresses licensees and externs, but not "students" working at cosmetology school-run salons. *See* Bus. & Prof. Code § 7349 (referencing § 7395.1, applying to unpaid externs enrolled in cosmetology schools who work in a "cosmetology establishment participating in the educational program of the school").  As held in *Ford*, "the Legislature has only seen fit to specifically address the employment status of two groups in the Act:  unpaid externs, and individuals working outside licensed establishments without compensation.  Thus the employment status of cosmetology students is left to be determined by California employment law." *Ford*, 2014 U.S. Dist. LEXIS 109540, at *21 (internal citation omitted).[7]

"Employees" and "students" at cosmetology schools are no longer categorically separate – there are multiple areas of overlap in the relevant Business and Professions Code provisions. For example, the current statute provides that an *apprentice* may be engaged in learning barbering, cosmetology, and other esthetics skills in a licensed establishment under the supervision of a licensee approved by the board.  Bus. & Prof. Code § 7332.  Though they are not yet licensed cosmetologists, apprentices may perform services on the public.  Bus. & Prof. Code § 7334.  They are paid for their work, and are required to attend classroom training, in addition to working at a commercial establishment.  Bus. & Prof. Code § 7333; Labor Code § 3071.  Unlike in 1944, when *Hutchison* was decided, today there are plainly "dual" employer-employee/student-trainer relationships.

///

_____

[7]  Defendant may seek to rely on a Cosmetology Board Circular Letter, which arose during the course of this litigation, on December 18, 2014 ("circular letter").  The letter is entitled to no deference from the Court, and is neither instructive nor persuasive.  The Cosmetology Board does not govern employment relationships in California.  The circular letter does not analyze *Martinez*, which sets forth the controlling IWC framework defining the employment relationship.  Instead, the Letter recites provisions of the Cosmetology Act, ending with conclusory statements that if a student receives wages for their labor it would violate Business and Professions Code section 7317.  It provides no analysis and directly conflicts with the lengthy analysis and conclusion provided in *Ford*.

1      A federal court recently rejected a similar argument presented by the cosmetology school

2  defendants in support of their motion to dismiss the plaintiffs' New York state law claims in

3  *Winfield v. Babylon Beauty Sch. of Smithtown Inc.*, No. 13-6289, 2015 WL 1010431, at *16

4  (E.D.N.Y., Mar. 7, 2015).  The defendants argued that finding that the plaintiffs were

5  "employees" would necessarily conflict with state statutes prohibiting the unlicensed practice of

6  cosmetology.  The court found the argument problematic because defendants pointed to no legal

7  authority precluding students who are ostensibly supervised by licensed cosmetologists from

8  receiving a fee for their work.  *Id.*  The court also noted that interpreting a statute purportedly

9  intended to protect consumers to mean that students could not be paid for their work, but the

10  schools deploying their labor could collect fees from the public "would lead to absurd results."

11  *Id.*

12      Moreover, even if it were illegal to employ unlicensed people (such as Plaintiffs) to

13  perform cosmetology work, such would not bar their minimum wage claims.  For example,

14  undocumented workers who are employed illegally can still recover under California's wage

15  laws.  *See, e.g., Reyes v. Van Elk, Ltd.*, 148 Cal.App.4th 604, 618 (2007).  Undocumented (*i.e.,*

16  *unlawful*) workers may also recover under the state's anti-discrimination statute.  *See, e.g., Salas*

17  *v. Sierra Chem. Co.*, 59 Cal.4th 407, 428 (2014), cert. denied, 135 S.Ct. 755 (2014).

18         **3.**    **Under *Martinez* and Wage Order No. 2, Plaintiffs Are Employees of**

19             **Marinello.**

20      In *Martinez*, the California Supreme Court held that in actions to recover unpaid

21  minimum wages under Labor Code section 1194, "the IWC's wage orders do generally define the

22  employment relationship, and thus who may be liable." *Martinez,* 49 Cal.4th at 52.  To "employ"

23  has three alternative definitions. "It means: (a) to exercise control over the wages, hours, or

24  working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a

25  common law employment relationship." *Id.* at 64 (emph. in orig.). "Unlike the multi-factor test

26  employed in federal cases, any one of the three aspects – wages, hours, or working conditions – is

27  sufficient to impute employer liability under California wage and hour law." *Torres v. Air to*

28  *Ground Svcs.*, 300 F.R.D. 386, 395 (C.D. Cal. 2014) (internal citation omitted) (discussing *Martinez*).

20

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: EMPLOYMENT UNDER THE FLSA,
CALIFORNIA LABOR CODE, CALIFORNIA BUSINESS AND PROFESSIONS CODE, AND NEVADA LAW
CASE NO. CV 13-04993-VC

1    The current Wage Order Number 2 – effective January 1, 2001– applies to persons

2    employed in the personal service industry, which covers "beauty salons, *schools of beauty culture*

3    *offering beauty care to the public for a fee*, barber shops," and other such institutions rendering

4    services in health care or beauty. Wage Order No. 2, § 2(J); 8 CCR § 11020 (emph. added).

5    Thus, Wage Order No. 2 explicitly covers Defendant's cosmetology school-run salons. As in

6    *Martinez,* the Wage Order defines "employ" as meaning "to engage, suffer, or permit to work"

7    and defines an "employer" as someone who "employs or exercises control over the wage, hours,

8    or working conditions of any person."  Wage Order No. 2, §§ 2(D), (F).

9    The *Martinez* court reviewed the history of the IWC and its legislatively-authorized broad

10    authority, noting that "language consistently used by the IWC to define the employment

11    relationship" was broad and "commonly understood to reach irregular working arrangements that

12    fell outside the common law."  *Martinez*, 49 Cal.4th at 65.  The court cautioned against

13    "confounding federal and state labor law" and explained that "courts must give the IWC's wage

14    orders independent effect in order to protect the commission's delegated authority to enforce the

15    state's wage laws and, as appropriate, to provide *greater protection to workers than federal law*

16    *affords*."  *Id*. at 68 (emph. added).  *See accord Carrillo v. Schneider Logistics Trans-Loading &*

17    *Distribution,* No. 11-CV-8557, 2014 WL 183956, *15 n. 5 (C.D. Cal. Jan. 14, 2014)

18    (citing *Guerrero v. Sup. Ct.,* 213 Cal.App.4th 912, 945 (2013)) (California wage law provides

19    more expansive employer definition than the FLSA).

20    Here, Defendant permits – and indeed requires – Plaintiffs to perform work in their

21    salons, with Marinello reaping revenues from the uncompensated work.  Plaintiffs perform

22    cosmetology services, sell products, and also perform janitorial and clerical services, including

23    indispensable cleaning, sweeping, laundry, dispensary, and receptionist duties.

24    Moreover, Defendant exercises control over Plaintiffs' hours, working conditions, and

25    wages (*i.e.,* the lack of wages – Defendant has decided not to pay Plaintiffs for their labor).

26    Defendant not only controls the types of services provided by Plaintiffs, but the manner and

27    condition in which those services are provided (the "Marinello Method" and "Marinello

28    culture").  Defendant has a policy that Plaintiffs must provide whatever service a customer

21

1  requests, and prohibits Plaintiffs from leaving until all requested services are complete.

2  Defendant has detailed policies regarding dress code and appearance, requiring Plaintiffs to

3  purchase and wear Marinello t-shirts and otherwise conform to Marinello's uniform code.

4  Plaintiffs have strict schedules set by Defendant, and are fined $11 per hour for tardiness and

5  absences.  Defendant disciplines Plaintiffs for failing to adhere to policies with written warnings

6  and suspensions (imposing additional fines during suspensions).  In sum, Plaintiffs' employment

7  is controlled by Defendant.

8  ### 4.  PAGA Provides the Broadest Definition of Employment.

9  PAGA encompasses "any provision" of the Labor Code.  *See McDonald v. Ricardo's on*

10  *the Beach, Inc.*, No. 11-9366, 2013 WL 153860, *3 (C.D. Cal. Jan. 15, 2013).  Labor Code

11  section 558 – individually actionable through PAGA – makes any defendant liable for PAGA

12  penalties if it is "acting on behalf of an employer who violates, or causes to be violated" any

13  Labor Code provision.  *Cf. Reynolds v. Bement* 36 Cal.4th 1075, 1094 (2005), *overruled on other*

14  *grounds by Martinez v. Combs* (Moreno, J., concurring) (discussing breadth of PAGA

15  protections).  Accordingly, under the expansive Labor Code and IWC Wage Order definitions of

16  "employer" and PAGA – which encompasses them – Plaintiffs are employees under California

17  law.

18  ### C.  Plaintiffs are Entitled to Restitution Under Section 17200.

19  Business and Professions Code section 17200 derives unfair competition violations from

20  Labor Code violations and provides restitution for unpaid wages.  *Cortez v. Purolator Air*

21  *Filtration Products Co*., 23 Cal.4th 163, 177 (2000) (Section 17200 authorizes, as restitution,

22  order for payment of unlawfully withheld wages).  The restitutionary relief is especially apropos

23  here.  Because Marinello does not pay the "students" working in its salons, it undercuts the prices

24  of other competitor salons (Ada Dep., 72:3-73:8).  Defendant's website advertises that its salons

25  "offer exclusive Salon and Spa Services to their guests at affordable prices" and can provide a

26  full range of services "without you having to spend through your nose for them" (RJN, Exh. C;

27  *see also* Ada Dep., 64:23-65:24).  Because Defendant is liable for Labor Code violations, the

28  Court should grant Plaintiffs summary judgment on their Section 17200 cause of action.

22

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: EMPLOYMENT UNDER THE FLSA,
CALIFORNIA LABOR CODE, CALIFORNIA BUSINESS AND PROFESSIONS CODE, AND NEVADA LAW
CASE NO. CV 13-04993-VC

1        **D.      Plaintiffs Are Employees Under Nevada Law.**

2        Nevada's Cosmetology Act does not override or displace Nevada's wage laws (*see*

3   discussion at Dkt. No. 28, pp. 10-11).  A Nevada federal district court recently addressed this

4   same argument, rejecting the beauty school defendant's contention that it is barred as a matter of

5   law from compensating its students.  *Guy*, 2015 WL 56048*,* at *2-3 (the Nevada Cosmetology

6   Act "does not expressly prohibit the compensation of students; it merely prohibits advertising

7   that the students will be compensated").

8        Nevada minimum wage laws are enshrined in the state Constitution as well as in its labor

9   statutes.  Article 15, Section 16, of Nevada's Constitution states that "each employer shall pay a

10  wage to each employee of not less than the hourly rates set forth in this section."  The Nevada

11  Supreme Court recently affirmed that Nevada's minimum wage laws are "equal to or more

12  protective than the FLSA" and that the analysis for interpreting the definition of "employer" for

13  purposes of state law mirrors the FLSA's "economic realities" test.  *Terry v. Sapphire*

14  *Gentlemen's Club*, 336 P.3d 951, 956 (Nev. 2014), reh'g denied Jan. 22, 2015.

15       Cosmetology regulations regarding advertising cannot override the state's constitution.

16  The Nevada Cosmetology Act, like California's, addresses the standards of professional skill and

17  training for students, not workers' wages. In fact, the Cosmetology Act does not even speak to

18  wages, except to expressly endorse cosmetology students receiving compensation from paying

19  customers in the form of tips.  *See, e.g., Guy*, 2015 WL 56048, at *2-3.

20       Accordingly, Plaintiffs are "employees" under Nevada law and must be compensated

21  according to the minimum wage laws of Nevada.

22  **IV.    CONCLUSION**

23       For the foregoing reasons, Plaintiffs respectfully request the Court grant their motion for

24  summary judgment on the issue of whether Plaintiffs are employees entitled to minimum wage

25  ///

26  ///

27  ///

28  ///

1  and other protections under the Fair Labor Standards Act, the California Labor Code, and the

2  Nevada Constitution and Revised Statues, along with restitution under the California Business

3  and Professions Code.

4

5  DATED:  June 16, 2015               Respectfully submitted,

6                                  BRYAN SCHWARTZ LAW
                                  RUDY, EXELROD, ZIEFF & LOWE, L.L.P.

7                                  LAW OFFICE OF LEON GREENBERG

8

9                        By:   */s/ Chaya M. Mandelbaum*
                                  BRYAN SCHWARTZ

10                                ADETUNJI OLUDE
                                DAVID A. LOWE

11                                CHAYA M. MANDELBAUM

12                                MICHELLE G. LEE
                                LEON GREENBERG

13                                DANA SNIEGOCKI

14                                *Attorneys for the Named Plaintiffs and all
                                others similarly situated*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT RE: EMPLOYMENT UNDER THE FLSA,
CALIFORNIA LABOR CODE, CALIFORNIA BUSINESS AND PROFESSIONS CODE, AND NEVADA LAW
CASE NO. CV 13-04993-VC